**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| KIMBERLY KING and DAKNESIA BEARD,<br>    Individually and on Behalf of<br>    all Others Similarly Situated,<br>        PLAINTIFFS,<br><br>v.<br><br>FINANCIAL CREDIT SERVICE, INC.,<br>d/b/a ARA, INC. and d/b/a ASSET RECOVERY<br>ASSOCIATES,<br>BRUCE COHEN, individually,<br>MARIO BIANCHI, individually, and<br>SURETEC INSURANCE COMPANY,<br>        DEFENDANTS | Case No.  1:18-cv-492 |

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**
**FOR DAMAGES UNDER**
**THE RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT,**
**THE FAIR DEBT COLLECTION PRACTICES ACT, AND**
**THE TEXAS FINANCE CODE**

Plaintiffs Kimberly King ("King") and Daknesia Beard ("Beard) (King and Beard collectively referred to as "Plaintiffs"), by and through their undersigned counsel, bring this class action lawsuit against Financial Credit Service, Inc., d/b/a ARA, Inc. d/b/a Asset Recovery Associates ("ARA") and Bruce Cohen ("Cohen") and Mario Bianchi ("Bianchi") (ARA, Cohen and Bianchi collectively referred to as "Defendants") and alleges as follows:

**NATURE OF ACTION**

1. This is a class action lawsuit brought pursuant to the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. sec. 1692, *et seq*. and the Texas Finance Code ("TFC") § 392.001, *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. sec. 1692k(d) and 28 U.S.C. § 1331.

3. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where a substantial portion of the acts and transactions giving rise to Plaintiffs' action occurred in this State and this District, and where one or more Plaintiffs reside(s) in this State and this District and 18 U.S.C. § 1965(a).

## PARTIES

5. King is an adult individual who, at all times relevant to the allegations described herein, resided in Travis County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1), and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

6. Beard is an adult individual who, at all times relevant to the allegations described herein, resided in Katy, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1), and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

7. Cohen is a natural person believed to be residing at 8703 W Stolting, Niles, IL 60714.

8. Cohen is the President and/or an owner of ARA.

9. Bianchi is a natural person believed to be residing 1334 S. 60th Ct., Cicero, IL 60804.

10. Bianchi is a high ranking officer and/or an owner of ARA.

11. ARA is an Illinois corporation with principal offices situated at Lombard, Illinois, according to its most recent filing with the Illinois Secretary of State.

12. ARA's website (www.arainc.com) states the following:

a.  ARA Inc. is a collection agency.  We specialize in accounts receivable management and consumer debt recovery.

b.  At ARA, we resolve debts owed to almost every major bank and credit card Company in the country. Our belief after years in this industry is that most ex-cardholders didn't intend to default on their bill at the time they did. However, something happened and it resulted in a financial setback at that time in their life.

c.  When we obtain your debt, it has already gone through the bank or finance company's own in-house collection department and usually has been sent to 2 or more collection agencies but for whatever reason the account remains unpaid. In most cases a judgment has not yet been obtained on the account. Our job is to see that the debt is settled in a manner that everyone can live with - you, your original creditor and us.

13. ARA is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

14. Cohen is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

15. Bianchi is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

16. The principal purpose of Defendants, and their respective owners, managers, employees and/or agents, is the collection of debts using the mails and telephone and other means.

17. Defendants, and their respective owners, managers, employees and/or agents, regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

18. SureTec Insurance Company ("SureTec") is a surety bond company doing business in Texas and who can be served at 9737 Great Hills Trail, Suite 320, Austin, TX 78759.

19. SureTec is liable for ARA's violation(s) of the Texas Finance Code pursuant to a bond on file with the Texas Secretary of State, specifically bond number 3379712.

### FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

20. Sometime prior to the filing of this Complaint, Plaintiffs allegedly incurred separate financial obligations.

21. The account Defendants were attempting to collect from King was an old credit card account ("King account"), the funds from which were used for various personal effects and not for business or commercial purposes.

22. The account Defendants were attempting to collect from Beard was a personal pay day loan ("Beard account"), the funds from which were used for various personal effects and not for business or commercial purposes.

23. The King account and Beard account are hereinafter referred to collectively as "the accounts."

24. The accounts allegedly went into default with their respective original creditor prior to the filing of this Complaint.

25. After the accounts allegedly went into default, the accounts were placed with or otherwise transferred to ARA for collection.

26. The accounts each individually constitute a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and each is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

27. King disputes the King account.

28. Beard disputes the Beard account.

29. Plaintiffs request that ARA cease all further communication about the accounts.

30. ARA's collector(s) were employee(s) of ARA at all times mentioned herein.

31. ARA acted at all times mentioned herein through its employee(s).

32. Cohen acted at all times mentioned herein personally and through the employee(s) of ARA.

33. Bianchi acted at all times mentioned herein personally and through the employee(s) of ARA.

**RICO Enterprise**

34. During the entire course of the collection efforts against Plaintiffs, Cohen and Bianchi were the owners and/or officers of ARA and had active control or operation of the management of ARA by instructing ARA's employees in the course of their employment/agency with ARA. Cohen and/or Bianchi taught all employees of ARA the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of ARA.

35. During the entire course of the collection efforts against Plaintiffs, Cohen and Bianchi acted in association with ARA and each other regarding the conduct toward both Plaintiffs and all members of all classes of individuals proposed below by showing up to ARA offices to work and by using ARA equipment and by assisting ARA in obtaining revenue.

36. ARA is a legal entity, separate and distinct from all other defendants and separate and distinct from the association of all other defendants. ARA was the avenue through which all other defendants conducted their operation. ARA served as the receptacle of all monies fraudulently obtained, or attempted to be obtained by fraudulent means, as described below. ARA was governed by Cohen and/or Bianchi and required one or more of ARA's employees to act in the fraudulent manner described below in order to obtain revenue.

37. The interactions of the defendants as described in paragraphs 34-36 above establish the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4).

**Fraudulent Collection Practices**

**Attempts to Collect from King**

38. During the one year prior to the date of the filing of this Complaint, ARA and/or representative(s), employee(s) and/or agent(s) of ARA made telephone calls to King to collect the King account.

39. During the one year prior to the date of the filing of this Complaint, on approximately July 11, 2017, ARA and/or representative(s), employee(s) and/or agent(s) of ARA used telecommunications to communicate with King about the King account in order to collect the King account.

40. ARA told King that ARA would sue her and garnish her wages and/or bank accounts if the King account was not paid immediately.

41. Because of the age of the King account, however, any lawsuit on the King account was barred by the applicable statute of limitations at the time of the threats to sue King.

42. Also, because King had not yet been sued on the King account, and because King could not be sued on the King account, ARA could not garnish King's wages and/or bank account as threatened.

43. The threats to sue King and to garnish King's wages were false and deceptive statements.

44. ARA spoke to King in a rude, condescending and demeaning manor.

45. ARA also failed to inform King that the communication was an attempt to collect a debt and that ARA was a debt collector and that any information obtained would be used for the purpose of debt collection.

46. ARA never informed King of her rights to dispute the debt nor did it provide any of the other notices required by 15 U.S.C. § 1692g.

47. All of the conduct by ARA described above was done knowingly and willfully and purposefully.

48. ARA and Cohen and Bianchi and their agents and employees knew that the information provided to King was false.

49. ARA and Cohen and Bianchi and their agents and employees told King the above false information in order to trick, deceive and manipulate King into transmitting money to ARA.

50. The use of telephones by ARA and Cohen and Bianchi and their agents and employees to transmit the false information and to carry out their scheme to defraud King into paying

them money as described above via wires constitutes wire fraud in violation of 18 U.S.C. § 1343.

**Attempts to Collect from Beard**

51. During the one year prior to the date of the filing of this Complaint, ARA and/or representative(s), employee(s) and/or agent(s) of ARA made telephone calls to Beard to collect the Beard account.

52. During the one year prior to the date of the filing of this Complaint, in approximately July 2017, or August 2017, ARA and/or representative(s), employee(s) and/or agent(s) of ARA used telecommunications to communicate with Beard about the Beard account in order to collect the account.

53. ARA's representative(s), employee(s) and/or agent(s) told Beard that ARA was "a representative of Harris County" and that check fraud charges were being pursued against Beard for failure to repay the balance of the Beard account.

54. The statement above was an implication that ARA was law enforcement.

55. ARA intended to cause Beard to believe it was law enforcement when it identified itself as "a representative of Harris County."

56. After ARA's representative(s), employee(s) and/or agent(s) told Beard that ARA was "a representative of Harris County" the caller told Beard to call a specific phone number to discuss resolution options further.

57. When Beard called the number she was given, the voice was the same as the previous "representation of Harris County" but identified as ARA.

58. Beard spoke with ARA and explained that she thought the Beard account had been paid in full.

59. ARA's representative, employee and/or agent hung up on Beard after Beard explained that she thought the Beard account had been paid.

60. Beard called back to ARA after being hung up on and was told that because she had refused to pay, she would be served with check fraud.

61. ARA demanded immediate payment of $200 to avoid the charges being filed against her.

62. When Beard told ARA that Beard did not have sufficient funds to pay $200 that day as demanded, ARA told her that she would now have check fraud on her record and then hung up on her again.

63. Beard called ARA again and a representative, employee or agent of ARA told Plaintiff that she would be taken to court for refusal to pay.

64. As of the filing of this complaint, Beard has not been charged by any law enforcement office with check fraud.

65. As of the filing of this complaint, no lawsuit has been filed against Beard on the Beard account.

66. The threats that Beard would be criminally prosecuted for check fraud were false and deceptive statements.

67. The threats to sue Beard for the balance of the Beard account were false and deceptive statements.

68. ARA spoke to Beard in a rude, condescending and demeaning manor.

69. Each time ARA spoke with Beard, ARA also failed to inform Beard that the communication was an attempt to collect a debt and that ARA was a debt collector and that any information obtained would be used for the purpose of debt collection.

70. ARA never informed Beard of her rights to dispute the debt nor did it provide any of the other notices required by 15 U.S.C. § 1692g.

71. All of the conduct by ARA described above was done knowingly and willfully and purposefully.

72. ARA and Cohen and Bianchi and their agents and employees knew that the information provided to Beard was false.

73. ARA and Cohen and Bianchi and their agents and employees told Beard the above false information in order to trick, deceive and manipulate Beard into transmitting money to ARA.

74. The use of telephones by ARA and Cohen and Bianchi and their agents and employees to transmit the false information and to carry out their scheme to defraud Beard into paying them money as described above via wires constitutes wire fraud in violation of 18 U.S.C. § 1343.

75. Cohen and Bianchi instructed the employees and agents of ARA to act in the manner they did when attempting to collect from Beard.

76. Cohen and Bianchi knew that the conduct of the employees and agents of ARA toward Beard was illegal, yet they instructed it or knowingly allowed it anyway.

77. ARA's purpose for all of the communications with King and Beard described above was to attempt to collect the Account.

78. Each telephone call individually conveyed information regarding the respective accounts directly or indirectly to King and Beard.

79. The telephone call(s) each individually constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

80. The only reason that ARA and/or representative(s), employee(s) and/or agent(s) of ARA made telephone call(s) to, had telephone conversation(s) with and left message(s) for King or Beard was to attempt to collect the respective accounts.

81. King suffered actual damages in the form of severe anxiety, loss of productivity at work and loss of sleep among other physical manifestations.  These effects continued for several days.

82. Beard suffered actual damages as a result of the conduct of the defendants.

83. As a direct and proximate result of the aforesaid actions, King and Beard seek damages pursuant to 18 U.S.C. § 1961(c), 15 U.S.C. § 1692k(a) and Tex. Fin. Code § 392.403.

**<u>RESPONDEAT SUPERIOR</u>**

84. The representative(s) and/or collector(s) at ARA were employee(s) and/or agents of ARA at all times mentioned herein.

85. The representative(s) and/or collector(s) at ARA were acting within the course and/or scope of their employment at all times mentioned herein.

86. The representative(s) and/or collector(s) at ARA were under the direct supervision and/or control of ARA at all times mentioned herein.

87. The actions of the representative(s) and/or collector(s) at ARA are imputed to their employer, ARA.

**<u>CLASS ACTION ALLEGATIONS</u>**

**<u>CLASS ONE – RICO CLASS</u>**

88. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class of individuals consisting of all persons located in the State of Texas who, in the four year period before the date of the filing of this Complaint,

received from, or were directed from, ARA false or fraudulent pretenses, representations, or promises, similar to but not limited to the fraudulent pretenses, representations, or promises described above, by means of wire communication in interstate or foreign commerce, for the purpose of causing such individuals to pay ARA money (collectively all plaintiffs described in this paragraph are referred to as "the RICO class").

89. Excluded from the RICO class are ARA, all other defendants named herein, the officers and directors of ARA and all other defendants named herein, Cohen, Bianchi, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which ARA has or had a controlling interest.

90. The proposed RICO class is so numerous that joinder of all members is impracticable. The exact number of class members of the RICO class is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery.  The proposed RICO class is ascertainable in that the names address of all members of the RICO class can be identified in business records maintained by ARA.

91. Plaintiffs' claims are typical of the claims of the members of the RICO class because Plaintiffs' claims and all claims of the members of the RICO class originate from the same conduct, practices and procedure on the part of ARA, Cohen and Bianchi and Plaintiff has suffered the same or similar injuries as each member of the RICO class.

92. Plaintiff has retained counsel experienced and competent in class action litigation.

93. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the RICO class may be relatively small, the expense and burden of individual litigation make it impossible for

the members of the RICO class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

94. Issues of law and fact common to the members of the RICO class predominate over any questions that may affect only individual members, in that defendants have acted on grounds generally applicable to the entire RICO class. Among the issues of law and fact common to the Class are:

   a. Defendants' violations of 18 U.S.C. § 1961, *et seq.* as alleged herein;

   b. Defendants' conduct particular to the matters at issue was identical or substantially similar;

   c. The availability of easily ascertainable damages in the amounts paid to ARA by members of the RICO class;

   d. The availability of triple damages; and

   e. The availability of attorneys' fees and costs.

## COUNT I:  VIOLATIONS OF RICO ACT
## BY ARA, COHEN AND BIANCHI

95. The previous paragraphs are incorporated into this Count as if set forth in full.

96. As described in paragraphs 8, 10, 32, 33, and 34, Defendants Cohen and Bianchi were persons employed or associated with ARA, a person and an enterprise unto itself as described in paragraphs 11 and 34.

97. The workings together of defendants ARA, Cohen and Bianchi formed the enterprise required by 18 U.S.C. § 1961(4).

98. The activities described in paragraphs 38-83 above affected interstate commerce because the activities caused or attempted to cause money to move from the possession of one or more persons across state lines to ARA and its owners/members.

99. As described above, Cohen and Bianchi, together with ARA, participated in the conduct of the enterprise's affairs.

100.     Cohen, Bianchi and ARA, on multiple times as described above, conveyed false information to Plaintiffs via telephone wires across state lines over a long period of time in order to defraud Plaintiffs into paying money to ARA, and thus established a pattern of racketeering activity.

101.     The King and Beard accounts of ARA's collection practices described above are only two descriptions of the thousands of similar attempts by ARA to fraudulently obtain money from residents of Texas and many other states.

102.     As a result of the racketeering activity, and only as a result of the racketeering activity, some members of the class paid money to ARA, constituting injury to the various class members' property.

103.     As such, the conduct of ARA, Cohen and Bianchi establish violations of 18 U.S.C. § 1962(c).

104.     Pursuant to 18 U.S.C. § 1964(a), Plaintiffs seek an appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a).

105.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek actual and triple damages as well as reasonable attorneys fees and costs.

**CLASS TWO – FDCPA AND TEXAS FINANCE CODE CLASS**

106.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class of individuals consisting of:

a.  all persons located in the State of Texas who, in the one year period before the date of the filing of this Complaint, were contacted by ARA in connection with an attempt to collect from the person any purported debt that was incurred primarily for personal, family or household purposes, where ARA or any of its employees and/or agents, conveyed to the person that ARA was acting as law enforcement and/or conveying that the person would face criminal charges if the account in question was not repaid, when in fact ARA was not law enforcement and/or the person would not face criminal charges if the account in question was not repaid;

b.  all persons located in the State of Texas who, in the one year period before the date of the filing of this Complaint, were contacted by ARA in connection with an attempt to collect from the person any purported debt that was incurred primarily for personal, family or household purposes, where ARA or any of its employees and/or agents, conveyed to the person, that the person would soon be served legal process, when in fact, there was no present intent to have the person served with legal process;

c.  all persons located in the State of Texas who, within one year before the date of the filing of this Complaint, were contacted by ARA in connection with an attempt to collect from the person any purported debt that was incurred primarily for personal, family or household purposes, where ARA, in any communication with the person, failed to disclose that the communication was from a debt collector;

d.  all persons located in the State of Texas who, within one year before the date of the filing of this Complaint, were contacted by ARA in connection with an attempt to collect from the person any purported debt that was incurred primarily for personal, family or household purposes, where ARA, in any communication with the person, failed to provide the person meaningful disclosure of ARA's identity;

e.  all persons located in the State of Texas who, within one year before the date of the filing of this Complaint, were contacted by ARA in connection with an attempt to collect from the person any purported debt that was incurred primarily for personal, family or household purposes, where ARA, failed to provide one or more of the notices required by 15 U.S.C. § 1692g within five days of the first communication with the person.

107.  All persons described in paragraph 106 and its subparts above are collectively referred to herein as "the FDCPA/TFC Class").

108.  Excluded from the FDCPA/TFC Class are ARA, all other defendants named herein, the officers and directors of ARA and all other defendants named herein, Cohen, Bianchi, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which ARA has or had a controlling interest.

109.  The proposed FDCPA/TFC Class is so numerous that joinder of all members is impracticable.  The exact number of class members of the FDCPA/TFC Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.  The proposed FDCPA/TFC Class is ascertainable in that the names

address of all members of the FDCPA/TFC Class can be identified in business

records maintained by ARA.

110.    Plaintiff's claims are typical of the claims of the members of the FDCPA/TFC Class

because Plaintiff's claims and all claims of the members of the FDCPA/TFC Class

originate from the same conduct, practices and procedure on the part of ARA and

Plaintiff has suffered substantially similar injuries as each member of the

FDCPA/TFC Class.

111.    Plaintiff has retained counsel experienced and competent in class action litigation.

112.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy, since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual members of the FDCPA/TFC

Class may be relatively small, the expense and burden of individual litigation make it

impossible for the members of the FDCPA/TFC Class to individually redress the

wrongs done to them.  There will be no difficulty in the management of this action as

a class action.

113.    Issues of law and fact common to the members of the FDCPA/TFC Class

predominate over any questions that may affect only individual members, in that

ARA has acted on grounds generally applicable to the entire FDCPA/TFC Class.

Among the issues of law and fact common to the Class are:

a.    Defendants' violations of 15 U.S.C. § 1692, *et seq*. as alleged herein;

b.    Defendants' violations of Tex. Fin. Code 392.001, *et seq*. as alleged herein;

c.    Defendants' conduct particular to the matters at issue was identical or

substantially similar;

     d.     The availability of statutory penalties; and

     e.     The availability of attorneys' fees and costs.

## COUNT II:  VIOLATIONS OF THE FDCPA
## BY ARA, COHEN AND BIANCHI

114.     The previous paragraphs are incorporated into this Count as if set forth in full.

115.     The act(s) and omission(s) of ARA, Cohen and Bianchi and their representative(s), employee(s) and⁄or agent(s) violated 15 U.S.C. § 1692(d)(6) and 15 U.S.C. § 1692e(2)(A)&(2)(B)& (4)&(5)&(7)&(8)&(10)&(11)&(13) and 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692g.

116.     Pursuant to 15 U.S.C. § 1692k Plaintiffs seek damages, reasonable attorney's fees and costs.

## COUNT III:  VIOLATIONS OF THE TEXAS FINANCE CODE
## BY ARA, COHEN AND BIANCHI

117.     The previous paragraphs are incorporated into this Count as if set forth in full.

118.     The act(s) and omission(s) of ARA and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code § 392.101 and § 392.301(a)(2)&(5)&(6)&(7) and § 392.304(a)(4)&(5)(A)&(5)(B)&(8)&(9)&(12)&(13)&(14)&(19).

119.     Pursuant to Tex. Fin. Code § 392.403, Plaintiffs seek damages, reasonable attorney's fees and costs.

## COUNT IV:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
## BY ARA, COHEN AND BIANCHI

120.     In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, ARA, Cohen and Bianchi are liable to Plaintiffs for

invading the Plaintiffs' privacy (intrusion on seclusion).   ARA, Cohen and Bianchi

intentionally intruded on Plaintiffs' solitude, seclusion, or private affairs, and such

intrusion would be highly offensive to a reasonable person.

121.    Plaintiffs suffered actual damages as a result of ARA's intrusion.

## COUNT V:  UNREASONABLE COLLECTION EFFORTS
## BY COHEN, ARA, BIANCHI

122.    In the alternative, without waiving any of the other causes of action herein, without

waiving any procedural, contractual, statutory, or common-law right, and

incorporating all other allegations herein to the extent they are not inconsistent with

the cause of action pled here, ARA, Cohen and Bianchi are is liable to Plaintiffs for

their unreasonable collection efforts.

123.    Plaintiffs have a right to be free from unreasonable and wrongful collection and/or

repossession efforts.  *See, e.g., Moore v. Savage*, 359 S.W.2d 95 (Tex. Civ. App. –

Waco 1962, writ ref'd n.r.e).

124.    Defendants' collection efforts were unreasonable and wrongful.

125.    Defendants' unreasonable collection efforts proximately caused Plaintiffs to suffer

injury, including but not necessarily limited to humiliation, mental anguish, anxiety

and fear.

## COUNT VI:  IMPUTED LIABILITY OF SURETEC INSURANCE COMPANY
## FOR LIABILITY OF ARA

126.    The previous paragraphs are incorporated into this Count as if set forth in full.

127.    The act(s) and omission(s) of ARA and its representative(s), employee(s) and/or

agent(s) in violation Tex. Fin. Code § 392.101 and § 392.301(a)(2)&(5)&(6)&(7) and

§ 392.304(a)(4)&(5)(A)&(5)(B)&(8)&(9)&(12)&(13)&(14)&(19) are imputed to

SureTec pursuant to Tex. Fin. Code § 392.102.

128.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's

fees and costs from SureTec.

## EXEMPLARY DAMAGES

129.    Exemplary damages should be awarded against ARA, Cohen and Bianchi because the

harm with respect to which Plaintiffs seek recovery of exemplary damages resulted

from malice (which means that there was a specific intent by ARA, Cohen and

Bianchi to cause substantial injury or harm to Plaintiffs) and/or gross negligence

(which means that the actions and/or omissions of Defendants (i) when viewed

objectively from Defendants' standpoint at the time of the acts and/or omissions

involved an extreme degree of risk, considering the probability and magnitude of

potential harm to others and (ii) were such that Defendants had an actual, subjective

awareness of the risk involved but nevertheless proceeded with conscious

indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

130.    The Plaintiff is entitled to and hereby demands a trial by jury.

## PRAYER F OR RELIEF

WHEREFORE, the Plaintiff requests that the Court grant the following:

131.    Judgment in favor of Kimberly King and against ARA, Cohen, Bianchi and SureTec

joint and severally as outlined below:

a.   Treble actual damages pursuant to 18 U.S.C. § 1964(c);

b.   Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    c. An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    d. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    e. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    f. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    g. Permanently enjoin Defendants following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    h. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    i. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996).

132. Judgment in favor of Daknesia Beard and against ARA, Cohen and Bianchi, joint and severally as outlined below:

    a. Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    b. Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    c. An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    d. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    e. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    f. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

g. Permanently enjoin Defendants following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

h. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

i. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996).

133. Judgment in favor of each member of the RICO Class and against ARA, Cohen and Bianchi, joint and severally as outlined below:

a. Treble actual damages pursuant to 18 U.S.C. § 1964(c);

b. Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c); and

c. An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

134. Judgment in favor of each member of the FDCPA/TFC Class and against ARA, Cohen and Bianchi, joint and severally as outlined below:

a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d. Permanently enjoin Defendants following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a).

e. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403; and

      f.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996).

135.    Judgment in favor of King, Beard and each member of the FDCPA/TFC Class and against SureTec Insurance Company as outlined below:

      a.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403.

136.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103, PMB 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff